UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| RENE FLORES, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 5:04-CV-157-BG ECF |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

Plaintiff Rene Flores seeks judicial review of a decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB). The United States District Judge reassigned this case to the United States Magistrate Judge for all proceedings. Flores did not, however, consent to the jurisdiction of the United States Magistrate Judge. Pursuant to the order reassigning this case, the undersigned now files this Report and Recommendation. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court affirm the Commissioner's decision.

**I.    Standard of Review**

The court is statutorily limited to determining whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. 42 U.S.C. § 405(g); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). The Commissioner's

decision is granted great deference and will not be disturbed unless the court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

## II. Facts

Flores has a history of back and shoulder impairments. He underwent a number of procedures on his left shoulder. He underwent arthroscopic repair of a torn rotator cuff that resulted from left shoulder dislocation in June 1998. (Tr. 573, 576-77, 584.) He suffered impingement in the left shoulder and underwent decompression and ligament release in April 2002. (Tr. 112.) In May 2004 he underwent arthroscopic repair for a tear in his left shoulder. (Tr. 681.)

The medical records indicate that Flores' back problems began in April 2001. At that time he worked as a delivery driver for a florist and was involved in a motor vehicle accident while driving a delivery truck. (Tr. 122.) An MRI of Flores' spine showed mild degenerative disc disease and minimal bulging, and it was believed that the conditions were preexisting and unrelated to the accident. *Id.* A physician diagnosed stress aggravation of preexisting degenerative disc disease and facet joint arthrosis. (Tr. 122.) Flores continued to work. (Tr. 123.) Nearly one year later in March 2002 Flores complained of back pain that varied in intensity throughout the day and that was helped somewhat with medication. (Tr. 608.) A physician treated his pain with an epidural steroid injection at that time, and he underwent another injection in April 2002. (Tr. 85, 610.) Flores stopped working in May 2002 to undergo a lumbar fusion and applied for DIB on August 20, 2002. (Tr. 336-38, 397.)

2

He was thirty-two years old at that time. (Tr. 336.)

Following surgery Flores experienced improved range of motion, experienced no radiation, and although he complained of some aching and stiffness, his physician believed the fusion had "taken well." (Tr. 104, 106.) However, Flores sought treatment in an emergency room thereafter for back pain. (Tr. 90.) An x-ray showed that his spine was within normal limits with the exception of a surgical scar. (Tr. 80.) Flores continued to complain of back pain, and in January 2003 a physician assessed low back pain caused by degenerative disc disease. (Tr. 215.) The physician noted no loss of gross motor strength but referred Flores to physical therapy. (Tr. 211.) In April 2003 Flores complained of back pain and shooting pain in his right leg. (Tr. 188.) His physician noted that an MRI in February 2003 and a CT Scan showed no gross abnormalities; he determined that Flores suffered from failed back surgery syndrome, radicular pain in his right leg, and lumbar sympathetic arthropathy. (Tr. 190.) In 2004 diagnostic studies showed significant facet degenerative joint disease at the L4-5 level, a bulging disc at the L3-4 level, and a right L5-S1 radiculopathy. (Tr. 571, 713, 757.) Physicians continued to diagnose Flores with failed back surgery syndrome and treated his pain with medications, including hydrocodone, and with other conservative measures. (Tr. 258, 270, 282, 722, 727-28.)

The Administrative Law Judge (ALJ) determined that Flores' problems with his left shoulder and back were severe impairments but that his testimony regarding his pain and functional limitations was not credible and that he was capable of performing sedentary jobs

3

with a sit/stand option and that he was not disabled. (Tr. 391-92.)

## III. Discussion

Flores contends the ALJ failed to properly consider the evidence. He specifically complains of the ALJ's rejection of an opinion from his treating physician and of the ALJ's rejection of his allegations of pain. In regard to the physician's opinion, Flores complains the ALJ rejected the physician's opinion on grounds that the record lacked evidence of neurological abnormalities. He contests the ALJ's conclusion and points to evidence of atrophy, radiculopathy, sensory and motor loss, and nerve root compromise.

The ALJ did not err. A treating physician's opinion is not conclusive; responsibility for determining a claimant's disability status lies with the Commissioner. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). Therefore, when good cause is shown, the ALJ may assign little or no weight to a treating physician's opinion. *Id*. (citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)). Good cause may exist when the treating physician's opinion is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Greenspan*, 38 F.3d at 237.

The opinion at issue in this case is a "Physical Residual Functional Capacity Questionnaire" completed by Chad Gray, M.D. (Tr. 659-64, 671.) Dr. Gray indicated on the form that Flores suffered from failed back surgery syndrome and right radiculopathy and pain and weakness in his right leg. (Tr. 659.) He indicated that Flores was capable of sitting and standing no more than thirty minutes at a time. (Tr. 661.) He indicated, however, that this opinion was based on Flores' subjective report. *Id*. He also indicated that Flores was

4

capable of standing/walking less than two hours in an eight-hour workday, that he would need to take unscheduled breaks during the workday, that he was capable of lifting less than ten pounds occasionally, and that his impairments or treatment would require him to be absent from work more than three times per month. (Tr. 661-63.) In regard to a question as to how often and long Flores would need to walk, Dr. Gray indicated that he could not answer the question accurately. (Tr. 662.) In regard to a question regarding whether Flores would need to elevate his legs during prolonged sitting, Dr. Gray wrote, "unknown." *Id.* In regard to a question concerning Flores' ability to use his arms, hands, and fingers, he wrote, "cannot answer." (Tr. 663.)

The ALJ noted the "good cause exceptions" and cited medical evidence that was contrary to Dr. Gray's opinion. He noted, for example, that Dr. Gray had indicated in other records that an MRI scan in 2003 showed no abnormalities and that an MRI scan in March 2004 was negative for acute abnormalities. (Tr. 389; *see* Tr. 188, 568.) The ALJ also noted that on March 26, 2004, nearly three months before Dr. Gray completed the form at issue, the physician noted that Flores was "doing very well" and was taking less pain medication, and that he was intact neurologically. (Tr. 389; *see* Tr. 738.) Although Flores points to other evidence indicating that he suffered from neurological abnormalities, other evidence shows that he did not. For example, Dr. Gray noted on August 21, 2003, that Flores had not experienced a decrease in neurological function. (Tr. 282.) It was noted on June 3, 2004, that Flores exhibited 4/5 strength in his right lower extremity and 5/5 strength in his left lower extremity, and this assessment was confirmed by electromyography.

(Tr. 672, 699-700.) In a case in which the evidence indicates a mixed record concerning a claimant's health problems and limitations upon his ability to work, it is the ALJ's responsibility to weigh the evidence; the court is then charged with determining whether there is substantial evidence in the record as a whole to support the ALJ's determination. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001) (citation omitted). Substantial evidence supports the ALJ's determination.

The ALJ did not err in assessing Flores' credibility. The responsibility for determining whether pain is disabling lies with the ALJ and his decision in this regard is entitled to considerable judicial deference. *Chambliss*, 269 F.3d at 522; *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988) (citing *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987)). However, the ALJ must indicate the degree to which he finds the claimant's testimony credible and, in cases in which an ALJ discredits a claimant's testimony, he must indicate the basis for his decision. *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988); *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981); *see also* S.S.R. 96-7p, WL 374186 (the ALJ's decision must include findings that are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight).

The ALJ concluded that Flores' testimony was not credible and provided a number of reasons for his conclusion. The ALJ noted that there was "little in the way of neurological deficits or any muscle wasting." (Tr. 390.) The ALJ's finding is correct. A physician noted "some atrophy" in Flores' right extremity (Tr. 851), but other physicians noted that motor

function and motor strength were within normal limits. (Tr. 189, 211, 991). The ALJ also noted that Flores used a cane at the hearing, but that there was no record of a physician prescribing the cane and there was no evidence of muscle atrophy characteristic of consistent cane usage. (Tr. 390.) The record supports this conclusion. (Tr. 672.) Finally, the ALJ noted that Flores was not using the cane at the hearing in a manner appropriate for a person complaining of right leg pain; he noted that Flores used the cane on his left side rather than on his right side. (Tr. 390.) Flores does not dispute this conclusion.

The ALJ also noted that the medical records did not support Flores' testimony that he burned himself with a heating pad because he had lost sensation in his back. (Tr. 388.) The ALJ is correct. The record includes notations of loss of pain sensation in Flores' left leg and a decrease in sensory abilities in his right leg. (Tr. 189, 805, 812.) The medical records do not, however, demonstrate sensory loss in Flores' back. (*See, e.g.,* Tr. 690, 771, 777, 779, 991.) Finally, the ALJ noted that inconsistency between Flores' testimony regarding his appetite and the medical records materially harmed Flores' credibility. (Tr. 387.) Flores testified that he had a "very poor" appetite and that he had lost twenty-five pounds, but subsequent records showed that he was on a diet to lose weight. (Tr. 189, 387, 398.) In addition, the records show that on August 21, 2003, Flores was measured at five feet six inches tall and weighed 205 pounds; he weighed 209 pounds on January 12, 2004; and he weighed 211 pounds on May 21, 2004. (Tr. 310, 695, 779.) As the ALJ found, Flores' testimony regarding his appetite is contradicted by the records and calls into question his credibility.

Finally, Flores complains that the ALJ discounted his allegations of pain on grounds that records from 2004 and 2005 reflected that he underwent pain management only and that he failed to consider evidence of his inability to pay for any other types of treatment or procedures. Flores is incorrect. The ALJ merely noted that the records from 2004 and 2005 contained documentation of Flores' subjective complaints and the medications prescribed to treat his pain but did not include evidence that would establish medical abnormalities. (Tr. 389.)

The ALJ's decision should stand. Flores' own testimony supports the ALJ's decision that he can perform sedentary work with a sit/stand option. Flores testified that he read the newspaper and watched television during the day. (Tr. 418-19.) He testified that he used a cane and experienced difficulty reaching with his left arm, but he also testified that he was right-handed. (Tr. 422-23.) He testified that he could walk approximately one-quarter block, stand for approximately fifteen minutes, sit for approximately fifteen minutes before needing to change positions, and lift approximately ten pounds. *Id.* Flores' testimony, together with the objective medical evidence, provides substantial evidence to support the ALJ's ultimate conclusion.

### IV. Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Flores' complaint with prejudice.

8

## V. Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: December 19, 2007.

/s/ Nancy M. Koenig
NANCY M. KOENIG
United States Magistrate Judge